UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

04  11410 DPW

| | |
|---|---|
| LIM DOUK KIM and<br>PARK CAFÉ AND GALLERY, INC.,<br>Plaintiffs<br><br>v.<br><br>UNITED STATES<br>DEPARTMENT OF INTERIOR,<br>Defendant | RECEIPT # 56789<br>AMOUNT $150<br>SUMMONS ISSUED yes<br>LOCAL RULE 4.1<br>WAIVER FORM<br>MCF ISSUED<br>BY DPTY. CLK. TOM<br>DATE 6/22/04 |

CIVIL COMPLAINT   MAGISTRATE JUDGE _____

FACTS:

1. Plaintiff Park Cafe occupied the ground floor of the property located at 246 Market Street, Lowell, Massachusetts (hereinafter "Market Mills" or "the premises"), pursuant to a written, renewable ten-year lease since February 1, 1995. Park Café's primary business was providing restaurant/function hall services to the general public for a profit.

2. Plaintiff Lim Douk Kim purchased all shares of the Park Café in July, 2002.

3. On plaintiff's best knowledge and belief, defendant United States Department of Interior, through the National Park Service, (hereinafter collectively referred to as "NPS" or "landlord") at all pertinent times acted as landlord for the property and rented the first floor unit to the Park Café.

1

4. On plaintiff's best knowledge and belief, the defendant, United States Department of Interior, through the National Park Service also rents the second floor unit, located directly above the Park Café's leasehold unit, to LTC.

5. During or about 1996, McCrary delivered a set of keys and the door alarm codes to the Park Cafe to employees of LTC for an undefined accessway for unidentified "handicapped" persons through the Park Café's restaurant to the elevator at the far end of the restaurant. McCrary insisted to the Park Café owners that he was entitled to do so under the law.

6. The Park Café owners, immigrants from Cambodia, with limited business or legal acumen, did not object at the time because they feared retaliation.

7. By delivery of the keys and alarm codes to the LTC without instructions, McCrary gave unrestricted access to the Park Café to LTC staff, employees and guests and marginalized the security of the Park Café as a business concern.

8. No adjustment for rent was made based on the delivery of the keys to the LTC. On the plaintiff's knowledge and belief, the LTC experienced no increase in their rent based on the expanded access-way.

9. During or about July – August 2002, LTC Executive Director George Preston verbally offered the Park Café $120,000.00 for the unexpired term of the lease and option to renew for 10 years. Kim declined the offer, though negotiations continued between Kim and Preston throughout the rest of 2002.

10. During or about November – December 2002, Kim informed McCrary of an offer of $200,000.00 for the leasehold from another party. McCrary insisted that Kim not transfer the lease, stating that, as it maintains a right to do so under the lease agreement, the NPS

would not approve the proposed assignment. McCrary also stated at that time that, as a member of the Board of Directors of LTC, he, McCrary, would be able to influence an increase in LTC's offer due to an expected LTC budget appropriation.

11. On or about February 14, 2003 the Park Café hosted a function. At the end of the night, Kim locked the Park Café and began a planned vacation, having informed McCrary in advance of her vacation plans.

12. During her vacation, persons unknown entered the Park Café and unplugged the Park Café's meat freezer, which was full of meat (approximately $800.00 worth of seafood). The meat spoiled and the building became befouled by the aroma of rotting flesh. City of Lowell Board of Health officials contacted Kim and told her of complaints. City officials found no signs of forced entry into the Park Café and the alarm never sounded.

13. Kim immediately went to the Park Café and discovered the unplugged freezers and the rotting meat. She was ordered by the Board of Health to deal with the rotting meat and to eliminate the odors. She immediately took steps to comply.

14. NPS seized this opportunity to press Lim Douk Kim for payment of "overdue" rent. Prior to this event, NPS had allowed Park Café to accumulate rent arrearages and pay them off in bi-annual increments.

15. On February 19, 2003, an Executive Committee meeting of the LTC was held in which LTC directors (of which McCrary is one) authorized offering Park Café $2,000.00 to defray moving costs and assumption of liability for any and all rent arrearages in consideration for assignment of the Park Café's leasehold rights.

16. On March 7, 2003, Kim appeared at the NPS office and offered to pay the rent arrearage. Payment was refused by NPS staff member Lee Hammond, who stated that McCrary

instructed her not to accept the rent and that the Park Café should not pay rent until a scheduled meeting between NPS and Park Café on March 21, 2003 occurred.

17. On or about March 9, 2003, an inspection of the premises was conducted by McCrary, members of the City of Lowell Police, Fire, and Health Departments and by the City of Lowell Building Department, in further response to the February complaint of odors. At this inspection, Lowell Assistant Building Inspector David St. Hillaire stated that the Park Café could not get a business permit to operate with the building configured as it was, with the access to the LTC through the dining area of the Park Café.

18. After hiring counsel, Kim attempted to mitigate damages by seeking to address the conditions listed in the Board of Health citations, but would not invest the money to do so unless and until the NPS agreed to terminate the access LTC's access to the Park Café and/or change the locks and security codes.

19. NPS was slow to respond to Park Café's request, citing federal law requiring handicapped access for the LTC unit and the fact that the elevator in the Park Café was the only available means to meet the handicapped access requirement.

20. Park Café was required to cancel several planned events and was forced to endure months of closure with a sign on the door notifying the general public that the Park Café was closed "by Order of the Board of Health."

21. But for the insistence of the NPS that the Park Café unit remain a viable access way for the upstairs tenant, the Park Café was ready, willing and able to reopen.

22. Upon ultimate agreement by the NPS to change the locks and terminate the LTC's access through the Park Café, months had elapsed (the locks and codes were changed in June, 2003), much of the Park Café's customer base had evaporated, and the retardant economic

effect of the closure had depleted the resources of the Park Café to make reopening by Lim Douk Kim unfeasible.

23. The threats of eviction by the NPS stultified Kim's efforts to secure outside capital investment to reopen the Park Café.

24. On or about September 25, 2003, notice was received by the Park Café that NPS was terminating the lease due to non-payment of rent, referring to a notice of default sent by NPS to Park Café April 23, 2003.

25. Park Café, through its counsel objected in writing to the termination by objecting to the sufficiency of the notice of non-payment of rent; challenging the obligation to pay rent at all; reciting the fact that the NPS refused rent under protest on March 7, 2003; and indicating that Park Café, as tenant, was rent withholding for conditions caused by the landlord.

26. On October 7, 2003, the Park Café owners arrived at the premises to find the locks had been changed.

27. On March 8, 2004, the Park Café became aware through newspaper advertisement that the equipment within the Park Café was being sold at auction by the order of the NPS.

COUNT I: BREACH OF QUIET ENJOYMENT

28. The Plaintiffs reallege and reaver the allegations and statements in Paragraphs 1 – 27 hereof.

29. As a landlord, the NPS may not interfere with the tenant's quiet enjoyment of the leased premises.

30. NPS Superintendent Patrick McCrary provided a key to the Park Café to staff of the second floor tenant, LTC, in order to provide LTC with access to the elevator that descends into the Park Café. Permission was not requested from or granted by owners or staff of the Park Café for this access.

31. Granting access to the Park Café by the landlord constitutes breach of the landlord's warranty of quiet enjoyment of the leased premises.

COUNT II: TRESPASS

32. The plaintiffs reallege and reaver the allegations and statements in Paragraphs 1 – 31 hereof.

33. Throughout her ownership of the Park Café, Lim Douk Kim has been startled to encounter staff members of LTC within the Park Café during non-business hours.

34. LTC staff, employees and officers have repeatedly accessed the interior of the Park Café's leased premises, without Park Café's permission, since the delivery of the keys to LTC by the landlord.

35. The entries into the Park Café's leasehold premises after business hours constitute trespass by members of the LTC officers, staff and employees.

36. The voluntary and illicit delivery by the NPS to LTC of the keys to the Park Café, constitutes trespass on the part of the NPS.

COUNT III: NEGLIGENCE

37. The plaintiffs reallege and reaver the allegations and statements in Paragraphs 1 – 36 hereof.

38. As the landlord, the NPS and/or McCrary had a duty to prevent Park Café from after hours intrusion.

39. By delivery of the keys to the LTC, the NPS and/or McCrary breached that duty.

40. The damage suffered by the Park Café was a reasonably foreseeable consequence of the negligence of NPS and/or McCrary.

41. But for the negligence of NPS and/or McCrary, the Park Café would not have suffered the injuries it did.

42. The acts and omissions of the NPS and/or McCrary alleged in Paragraphs 1 through 28 hereof constitute negligence.

## COUNT IV: BREACH OF CONTRACT (2 COUNTS)

### BREACH OF CONTRACT (COUNT 1):

43. The plaintiffs reallege and reaver the allegations and statements in Paragraphs 1 – 42 hereof.

44. McCrary's delivery of a set of keys and the security codes of the Park Café to the second floor tenant (LTC) so that the NPS could be in compliance with federal handicapped access regulations, forcing the plaintiffs to relinquish exclusive control, without compensation, and without altering the terms of the written lease constitutes a breach of the lease agreement on the part of the NPS.

45. The demand of NPS and/or McCrary that the plaintiffs surrender exclusive dominion of the Park Café's rented premises and share the premises with the LTC constitutes a breach of the lease contract by the defendants.

BREACH OF CONTRACT (COUNT 2):

46. The plaintiffs reallege and reaver the allegations and statements in Paragraphs 1 – 45 hereof.

47. In the alternative, having declared by delivery of the keys to the second floor tenant that the Park Café premises was "common area" to be used in common with other tenants (i.e. the LTC), the NPS was not entitled to collect rent on the Park Café premises, thus rendering the NPS demand for payment of the rent and notices of termination of the lease for non-payment or rent defective.

48. Termination of the lease for non-payment of rent in light of the "common area" declaration of the NPS constituted a breach of the lease contract by the NPS.

COUNT V: FRUSTRATION OF BUSINESS PURPOSE

49. The plaintiffs reallege and reaver the allegations and statements in Paragraphs 1 – 48 hereof.

50. The NPS and Park Café at all pertinent times were aware that the premises were being leased for the purpose of conducting a restaurant / function hall business.

51. Delivery by McCrary of the keys and security codes of the Park Café to the LTC and declaring an undefined "common area" through the Park Café restaurant, put the Park Café in violation of building codes of the City of Lowell such that no business certificate could issue in favor of the Park Café.

52. The delivery by McCrary of the keys and security codes for the Park Café to the LTC constituted a frustration of business purpose by the NPS.

## COUNT VI: FRAUD IN THE INDUCEMENT

53. The plaintiff(s) reaver and reallege the statements and allegations contained in Paragraphs 1 – 52 hereof.

54. In 1995, the owners of the Park Café were induced by NPS into leasing the premises for less than fair rental value, because the building was unoccupied and in disrepair.

55. The NPS was aware that their lease to the Park Café would induce the Park Café owners to invest considerable capital into building and equipment costs.

56. The owners of the Park Café made investments in excess of $200,000.00 to upgrade the interior of the premises and to furnish the premises for the operation of their restaurant.

57. The written lease of the parties called for rent to be "renegotiated" for the period beginning February 1, 2002, implying a two-way exchange by parties acting according to principles of good faith and fair dealing.

58. In April 2002 rent adjustment meeting, McCrary told the Park Café owners that the NPS was increasing the rent nearly 300%, and that if the Park Café could not afford the increase, they "will have to get out" of the building.

59. Under the circumstances, the evolution of the lease agreement into a contract of adhesion with a one-time, unilateral 300 percent rent increase constituted fraud in the inducement on the part of NPS and/or McCrary.

60. With specific reference to Paragraphs 53 - 59 hereof and the allegations and averments contained therein, the evolution of the lease agreement into a contract of adhesion with a 300% rent increase constituted fraud in the inducement on the part of NPS and/or McCrary.

## COUNT VII  CONVERSION

61. The plaintiff(s) reaver and reallege the statements and allegations contained in Paragraphs 1 – 60 hereof.

62. On or about March 10, 2004, by order of the NPS, the equipment of the Park Café was sold at auction.

63. Because this act was or might have been directly derived from an original act of a federal employee who was acting beyond the scope of his employment, this act, too must be considered beyond such scope of employment.

64. Under the circumstances described herein, the acts of the individual employees at the NPS in orchestrating the sale of the equipment of the Park Café constituted conversion by the landlord of the property of the tenant Park Café.

## COUNT VIII:  TAKING BY EMINENT DOMAIN WITHOUT COMPENSATION

65. The plaintiffs reallege and reaver the allegations and statements in Paragraphs 1 – 64 hereof.

66. The acts and/or omissions by officers and staff of the NPS in providing the Park Café's keys and security codes to third parties constitutes a taking by eminent domain without compensation under M.G.L. c.79, entitling the lessee to damages.

67. The acts and/or omissions by officers and staff of the NPS in terminating the lease under a defective claim of rent arrearage constitutes a taking by eminent domain without compensation under M.G.L. c.79, entitling the lessee to damages.

68. The acts and/or omissions by officers and staff of the NPS of ordering the selling at auction of the Park Café's equipment constitutes a taking by eminent domain without compensation under M.G.L. c.79, entitling to damages.

DAMAGES:

WHEREFORE the plaintiffs assert the following damages in compensation for their losses:

Demolition/construction/renovation of bathroom (at landlord's insistence)
    Fixtures and labor.................................................... $ 20,000.00

Demolition/construction/renovation of ice cream vending and kitchen area
    Material and labor.................................................... $ 80,000.00

Licensing, Vendor's, Victualer's, and Liquor
    Costs and professional fees......................................... $ 3,000.00

Ice Cream Stand, Nacho Stand, Oriental food Stand
    Combined purchase price............................................ $ 45,000.00

Performance stage construction
    Material and labor.................................................... $ 3,300.00

Dining facility
    Purchase 20 tables w/chairs........................................ $ 3,000.00
    Purchase (3) food freezers.......................................... $ 1,500.00
    Purchase buffet table................................................. $ 5,000.00
    Labor on Installation of dining facility items.................. $ 10,000.00
    Purchase dishes and silverware................................... $ 2,000.00

Removal/purchase/installation new floor tiling

    Material and labor............................................................ $ 6,000.00

Beverage refrigerator

    Purchase and installation.................................................. $ 3,500.00

Dishwasher

    Purchase and installation.................................................. $ 1,800.00

Hot water booster

    Purchase and installation.................................................. $ 1,200.00

Dishwasher table

    Purchase............................................................................ $ 700.00

Purchase cash register

    ............................................................................ $ 2,700.00

Purchase meat grinder

    ............................................................................ $ 1,200.00

Contract for April 5, 2003 function cancelled

Estimated receipts   ............................................................ $ 3,000.00

Contract for June 17, 2003 function cancelled

Estimated receipts   ............................................................ $ 3,000.00

    Damage to business reputation......................................... $100,000.00

    Legal fees incurred to date................................................ $ 1,350.00

    Estimated fair market value of long-term, renewable commercial

        lease 5,100 sq. ft. facility with unexpired term..................... $ 50,000.00

Loss of income for two years of unexpired term and one ten-year term

$50,000.00 x 12 (years in terms) .................................  $ 600,000.00

**Total damages and costs...............**                           $<u>947,250.00</u>

WHEREFORE, the plaintiffs, Park Café & Gallery, Inc and Lim Douk Kim, request this Honorable Court to grant the following relief:

1. Enter Judgment in favor of the plaintiffs and assess damages against the defendant United States in the amount of $947,250.00, with interest;

2. Assess the defendant United States for the plaintiffs' reasonable attorney's fees and costs, as appropriate; and

3. Grant the plaintiffs such other relief as this court deems meet and just.

June 22, 2004                                  Park Café & Gallery, Inc. and Lim Douk Kim,

                                               By their attorney,

                                               _____
                                               Denis T. Teague
                                               174 Central Street
                                               Suite 404
                                               Lowell, MA 01852
                                               (978) 454-6551
                                               Massachusetts BBO #642552

## CERTIFICATE OF SERVICE

I, Denis T. Teague, certify that on this _22nd_ day of _June_, _2004_, I served upon the defendant(s) in the above matter a true copy of the foregoing at their address(es) or record or at the address(es) of their counsel(s) of record by the following method:

\_\_\_\_\_ Service by postpaid mail

__X__ Service by certified/registered mail

\_\_\_\_\_ Service in hand

\_\_\_\_\_ Service by Sheriff or Constable

_Denis T. Teague_ (signature)
Denis T. Teague
174 Central Street
Lowell, MA 01852
(978) 454-6551
BBO #642552

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only) __KIM__ v. __UNITED STATES__

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

   ☐ I.   160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   ☐ II.  195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730, 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.
   *Also complete AO 120 or AO 121 for patent, trademark or copyright cases

   ☒ III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371, 380, 385, 450, 891.

   ☐ IV.  220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660, 690, 810, 861-865, 870, 871, 875, 900.

   ☐ V.   150, 152, 153.

   04  11410 DPW

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

   _____

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?
   YES ☐   NO ☒

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)
   YES ☐   NO ☒

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?
   YES ☐   NO ☐

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?
   YES ☐   NO ☒

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).
   YES ☒   NO ☐

   A. If yes, in which division do all of the non-governmental parties reside?
      Eastern Division ☒   Central Division ☐   Western Division ☐

   B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?
      Eastern Division ☐   Central Division ☐   Western Division ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)
   YES ☐   NO ☐

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME __DENIS T. TEAGUE__
ADDRESS __174 CENTRAL STREET, LOWELL, MA 01852__
TELEPHONE NO. __(978) 454-6551__

(Coversheetlocal.wpd - 10/17/02)

JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
LIM DOUK KIM and
PARK CAFE & GALLERY, INC.

**DEFENDANTS**
UNITED STATES

*CLERK'S OFFICE*
*2004 JUN 22 A 9:39*
*DISTRICT OF MASS.*

(b) County of Residence of First Listed Plaintiff __US__
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
DENIS T. TEAGUE, ESQ.
174 CENTRAL STREET
LOWELL, MA 01852  (978) 454-6551

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— Med. Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | ☐ 625 Drug Related Seizure of Property 21 USC | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | | ☐ 365 Personal Injury — Product Liability | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/Exchange |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | | | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Habeas Corpus: | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☒ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 790 Other Labor Litigation | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

**V. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.) USCA. 28: 1331
BREACH OF CONTRACT ACTION ON LEASE OF COMMERCIAL PROPERTY.

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ 947,250.00
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

**VIII. RELATED CASE(S) IF ANY** (See instructions):
JUDGE _____
DOCKET NUMBER _____

DATE: June 22, 2004
SIGNATURE OF ATTORNEY OF RECORD: Denis T. Teague

**FOR OFFICE USE ONLY**
RECEIPT # ____  AMOUNT ____  APPLYING IFP ____  JUDGE ____  MAG. JUDGE ____